IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL FAVATA, ET AL. | § | |
| | § | |
| v. | § | C.A. NO. C-12-082 |
| | § | |
| NATIONAL OILWELL VARCO, L.P., | § | |
| aka/fka BRANDT NOV | § | |

**MEMORANDUM AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This is an action brought by Plaintiffs against their former employer alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.  Pending is Defendant's motion for partial summary judgment.  (D.E. 33).  Plaintiffs have filed a response to this motion.  (D.E. 47).  Defendant filed a reply to Plaintiffs' response, (D.E. 48), and Plaintiffs filed a sur-reply.  (D.E. 49).  For the reasons stated herein, it is respectfully recommended that Defendant's motion be denied.

## I.  JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II.  BACKGROUND

On March 19, 2012, Plaintiffs Michael Favata, Jerry Jurach, Jack Akin, and Zack Hunter filed this action against their former employer, Defendant National Oilwell Varco, L.P., aka/fka Brandt Nov, alleging violations of the FLSA.  (D.E. 1).  They have filed three amended complaints, adding Michael Mallett, Jorge Acosta, and Josue Ramirez as plaintiffs.  (D.E. 4; D.E. 27; D.E. 43).  On October 3, 2012, Plaintiffs filed a motion for class certification, (D.E. 28), which was denied on October 31, 2012.  (D.E. 36).

Defendant filed a motion for partial summary judgment on October 25, 2012.  (D.E. 33).

On January 18, 2013, Plaintiffs filed a response in opposition, (D.E. 47), and Defendant filed a reply on January 28, 2013. (D.E. 48). Plaintiffs filed a sur-reply on January 29, 2013. (D.E. 49).

### III.  SUMMARY JUDGMENT EVIDENCE

Plaintiffs are all former employees of Defendant, which operates a business leasing equipment for use at oil and gas well drilling locations. (D.E. 33, at 5). They worked at Defendant's Corpus Christi office as "closed-loop operators." (D.E. 43, at 3). Their main duties involved working at the well drilling sites and monitoring the operation of Defendant's equipment. Id. More specifically, Plaintiffs were required to travel to oil rigs throughout Texas to install, operate, and maintain the equipment used to filter rocks and other solid materials from drilling fluids while the rig was operating. Id. Closed-loop operators worked either one- or two-man jobs. Id. at 4-6. During a one-man job, the operator was assigned to work a sixteen-hour shift, but was required to remain on the job location for a total of twenty-four hours. Id. During two-man jobs, two operators worked alternating twelve-hour shifts. Id. Operators were frequently required to work during their time off if their partner on duty needed assistance. Id. In addition, during both one-man and two-man jobs, operators were required to attend mandatory safety meetings approximately thirty minutes before the start of each shift, complete daily reports, and don and doff safety and work gear before and after each shift. Id.

Plaintiffs contend that Defendant prohibited them from reporting on their time sheets any time worked other than, or in excess of, sixteen hours for a one-man shift or twelve hours for a two-man shift. Id. As a result, they were not compensated for any additional work they performed. Id. In addition, they assert that when Plaintiffs Favata and Mallett protested

2

Defendant's pay policies, Plaintiff Favata was terminated and Plaintiff Mallett was demoted. Id. at 7.

On September 29, 2011, the Department of Labor ("DOL") contacted Defendant regarding its compliance with the FLSA based on a complaint that it was not paying employees for all hours that the employees had recorded on their time sheets. (D.E. 33, at 6). Specifically, it was alleged that Defendant had not been paying employees for time that its supervisors determined to have been over-reported. Defendant's supervisors had crossed out time on employees' time sheets to indicate over-reporting. (D.E. 33-4, at 3-4). The investigation covered the time period from October 3, 2009 through October 1, 2011.[1] (D.E. 33, at 10). Defendant cooperated with the DOL, and the investigation resulted in it agreeing to compensate a number of closed-loop employees–including each Plaintiff–for unpaid back wages through a supervised settlement. Id. at 7.

Defendant sent letters[2] and reimbursement checks to each Plaintiff, with the exception of Plaintiff Acosta. (D.E. 48, at 4). Defendant contends that along with these payments it also sent each Plaintiff his respective Form WH-58,[3] with instructions to sign and return the receipt for the payment. Id. at 2-5. The Form WH-58s provided that by accepting payment for back wages,

---

[1] These were the dates set forth by the DOL in Plaintiffs' respective WH-58s, and it is the period of time for which Defendant seeks partial summary judgment. (D.E. 33, at 10). The DOL indicated in its correspondence regarding the investigation that it ranged from September 30, 2009 through September 29, 2011. (D.E. 33-1, at 4).

[2] The letter sent to all recipients informed them that enclosed was "a check and a receipt for the check," with instructions to sign and return the receipt by mail. (D.E. 47-1, at 43).

[3] A Form WH-58 is a document filled out by an employer for each employee to whom it owes back wages, after it has admitted to liability, which it presents to the employee along with a back-wage check. The document is entitled, "Receipt for Payment of Lost or Denied Wages, Employment Benefits, or Other Compensation." It provides notice to employees that accepting back wages serves as a release by the employee against future FLSA claims against the employer. (D.E. 33-8, at 2).

Plaintiffs waived their right to bring future claims against Defendant for the FLSA violations. (D.E. 33-8, at 2). Plaintiffs dispute having received this notice, and none signed and returned the document. (D.E. 47, at 10-12). Instead of mailing a Form WH-58 and check to Plaintiff Acosta, Defendant's supervisor approached him during work and presented his check to him, telling him that he had to sign the Form WH-58 in order to receive the payment. Id. at 15. Plaintiff Acosta signed the form and took the check. Id. With the exception of Plaintiff Hunter, each Plaintiff accepted the payment he received. Id. at 5, 10-13.

## IV.  DISCUSSION

Defendant seeks summary judgment as to Plaintiffs' claims regarding insufficient wage payments during the period it was the subject of the DOL investigation, arguing that Plaintiffs waived their ability to file suit on those claims by accepting the back wage payments offered to them as part of the DOL's supervised settlement.[4]  (D.E. 33, at 5).

**A.      The Standard Of Review For Summary Judgment Motions.**

Summary judgment is appropriate when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, the Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. Courts must consider the record as a whole by reviewing all

---

[4] Defendant does not seek summary judgment for: (1) Plaintiffs' retaliation claims; (2) any claims arising after the period subject to the DOL's investigation, including claims by Plaintiffs Acosta, Akin, and Ramirez; and (3) Plaintiff Hunter's claims, because he did not accept the backpay check issued to him pursuant to the DOL investigation. (D.E. 33, at 1).

pleadings, depositions, affidavits, interrogatories and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).  The Court may not weigh the evidence or evaluate the credibility of witnesses.  Id.

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  Caboni, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  Anderson, 477 U.S. at 250-51.

**B.    Defendant's Motion Should Be Denied Because Plaintiffs' Claims Were Not Within The Scope Of The DOL Investigation.**

Pursuant to the FLSA, employers are required to pay non-exempt employees at least minimum wage for all time worked, and, for time worked in excess of forty hours per week, "at a rate not less than one and one-half times" their regular hourly wage.  29 U.S.C. §§ 206, 207.  Employees may sue an employer for FLSA violations to recover unpaid wages, liquidated damages equal in amount to those wages, and reasonable attorneys' fees.  29 U.S.C. § 216(b).  In addition, the Secretary of Labor may investigate alleged FLSA violations and then sue on behalf

of the aggrieved employee, or supervise a settlement between the employer and the employee. 29 U.S.C. §§ 211, 216(c). In a supervised settlement, the employer pays the unpaid back wages to the employee in exchange for the employee's agreement to waive all future claims pertaining to those wages against the employer. 29 U.S.C. § 216(c).

An employee's acceptance of a payment reached through a DOL settlement amounts to a waiver only when the employee agrees to accept the payment that the DOL determines to be due and it is "payment in full." Sneed v. Sneed's Shipbuilding, Inc., 545 F.2d 537, 539 (5th Cir. 1977); Solis v. Hotels.com Tex., Inc., No. 303CV0618L, 2004 WL 1923754, at *2 (N.D. Tex. Aug. 26, 2004) (unpublished) ("Once an employee agrees to accept a payment of back wages supervised by the DOL and receives payment in full of those wages, the employee waives any right to bring a suit against his employer to recover unpaid wages under § 216(b).") (citations omitted); accord Maynor v. Dow Chem. Co., No. G-07-0504, 2008 WL 2220394, at *10 (S.D. Tex. May 28, 2008) (unpublished) (citing Sneed and Hollis).

An "'agreement' is more than the acceptance of funds, as it must exist 'independent of payment.'" Dent v. Cox Commc'ns Las Vegas, Inc., 502 F.3d 1141, 1146 (9th Cir. 2007) (quoting Walton v. United Consumers Club, Inc., 786 F.2d 305, 305-07 (7th Cir. 1986)); accord Maynor, 2008 WL 2220394, at *11. "Typically an employee manifests assent by signing a receipt (either the standard WH-58 or another form authorized by the DOL), which puts the employee on notice of the resulting waiver." Dent, 502 F.3d at 1147; see also Sneed, 545 F.2d at 538 & n.3, 539-40. An employee may assent by cashing a check issued under a DOL-supervised settlement if a release was provided with the check. However, merely cashing the check does not release the employee's claims absent a release. See Walton, 786 F.2d at 306-07 (holding that

cashing a check issued under a DOL-supervised settlement did not release the employee's claims because the DOL did not send out a release form); Heavenridge v. Ace-Tex Corp., No. 92-75610, 1993 WL 603201, at *3 (E.D. Mich. Sept. 3, 1993) (unpublished) (the fact that the DOL supplies waiver forms with the check, not the employee cashing the check, effectuates the waiver).

    Here, Defendant argues that Plaintiffs waived any claims for unpaid wages from October 3, 2009 through October 1, 2011 by accepting payments from Defendant that were offered pursuant to the DOL's supervised settlement. (D.E. 33, at 10). In response, Plaintiffs put forth a number of arguments that can be distilled to the following objections: (1) Plaintiffs did not waive their FLSA claims based on Defendant's policy of prohibiting them from recording certain work activities outside the sixteen- or twelve-hour shifts because those claims were not investigated by the DOL; and (2) any waivers alleged by Defendant were ineffective because they were uninformed, defective, or fraudulently induced. (D.E. 47).

    Assuming, *arguendo*, that the waivers were valid, they would only prohibit Plaintiffs from raising claims that were contemplated as part of the DOL's investigation and resolved through the supervised settlement. See Meyers v. Pioneer Exploration LLC, No. 4:09-2256, 2010 WL 2710676 at *3 (S.D. Tex. July 6, 2010) (unpublished) (finding that waiver of "individual claims under the DOL settlement ... does [not] prevent employees who did receive a settlement from making any other claims not specifically waived") (citing Maynor, 2008 WL 2220394, at *11). Defendant indicates that the DOL's investigation resolved all claims regarding insufficient wages, implying that the DOL addressed the claims raised in this action. (D.E. 33, at 8). However, there is no evidence in the record to support this conclusion, and, in

fact, the DOL's investigation appears to have addressed an entirely separate FLSA violation.

Specifically, the DOL only investigated Defendant's failure to compensate employees for time that its supervisors had determined to be over-reported.  Its initial finding that Defendant had violated the FLSA was based solely on its review of the time sheets and payroll information that Defendant had provided.  (D.E. 33-1, at 4).  Moreover, to determine the amount owed in back wages, the DOL ordered Defendant to examine the time sheets in question, identify which sheets had been altered by supervisors, and create a spreadsheet that reflected the amount owed for the deductions.  (D.E. 33-4, at 4).  The DOL reviewed and approved the spreadsheet and then, once Defendant agreed to a supervised settlement, it issued Form WH-58s for each employee to whom Defendant owed payment.  (D.E. 33-1, at 4-5).  Accordingly, this investigation appears to contemplate Defendant's practice of unilaterally reducing employees' hours on signed time sheets, but nothing more.

By contrast, Plaintiffs assert here that Defendant had a general policy of prohibiting employees from reporting time spent performing specific work activities outside the sixteen- or twelve-hour work shifts.  Defendant does not suggest that this specific issue was raised by the DOL.  Moreover, because Plaintiffs did not actually report the extra time worked, Defendant's failure to compensate them for those hours would not have been discovered and resolved through the investigation.  As already explained, the investigation involved reviewing time sheets and payroll information, and comparing the hours *actually reported* by employees with the hours for which they were actually compensated.  Accordingly, the DOL investigation did not contemplate the FLSA violations that form the basis of this action.  By extension, the question of whether Plaintiffs waived their rights pursuant to the supervised settlement is irrelevant, because any

such waiver would have no bearing on Plaintiffs' ability to pursue their claims arising from separate and distinct FLSA violations.[5] Accordingly, it is respectfully recommended that Defendant's motion for partial summary judgment be denied.

## V.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Defendant's motion for partial summary judgment, (D.E. 33), be denied.

ORDERED this 7th day of February 2013.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

---

[5] This recommendation applies to Plaintiffs who allegedly received Form WH-58s in the mail, as well as to Plaintiff Acosta who concedes to having signed the waiver, but alleges that he did so under duress.  None of the Plaintiffs seek to recover wages that were the subject of the DOL investigation.

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).