IN **THE UNITED STATES DISTRICT COURT**
**THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MICHAEL FAVATA, ET AL, | § § | |
| Plaintiffs | § § | |
| v. | § § | CIVIL ACTION NO. 2:12-CV-00082 |
| NATIONAL OILWELL VARCO, LP., | § § | |
| aka/fka BRANDT NOV | § § | |
| Defendant. | § | |

### DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO PLAINTIFFS' JUNE 19, 2013 AND JULY 23, 2013 DISCOVERY REQUESTS

Defendant National Oilwell Varco, LP aka/fka Brandt NOV ("NOV") files this Response to Plaintiffs' Motion to Compel Responses (the "Motion") under Federal Rule of Civil Procedure 37.

NOV will attempt to address each point raised by Plaintiffs in their Motion below, but before getting into the particulars of the Motion, NOV notes that many of the issues raised in the Motion were never been the subject of any oral or written communication between Plaintiffs' counsel and counsel for NOV before Plaintiffs' filed this Motion. Plaintiffs' counsel have grossly misrepresented themselves to the Court when they signed the Certificate of Conference indicating that they attempted to resolve the issues in the Motion with NOV. Furthermore, many of the documents that are identified in Plaintiffs' Motion, documents that Plaintiffs are asking this Court to compel NOV to produce, have never been requested by Plaintiffs. Plaintiffs' counsel's scattershot and incoherent Motion was filed in bad faith, and in open defiance of this Court's procedures. The Motion is a waste of the Court's time, and NOV's resources.

NOV requests that the Court deny Plaintiffs' Motion.

## ARGUMENT

### I. PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

Plaintiffs ask the Court to compel NOV to produce documents that Plaintiffs' allege are responsive to Plaintiffs' discovery requests. However, a review of Plaintiffs' discovery requests reveals that many of the "categories of documents" listed in Plaintiffs' Motion were not included in any Request for Production served on NOV. Realizing this deficiency, Plaintiffs appear to claim that NOV should be compelled to produce documents in response to Interrogatories. Obviously, NOV has no obligation to produce documents in response to Plaintiffs' Interrogatories. *Stovall v. Gulf & S. Am. S.S. Co.*, 30 F.R.D. 152, 155 (S.D. Tex. 1961).

#### 1. End of Well and End of Month Reports

The first "category of documents" that Plaintiffs refer to in their Motion are "End of Well and End of Month reports." From a review of all of Plaintiffs' 5 Sets of Requests for Production, it is apparent that Plaintiffs have never sent a Request for Production mentioning "End of Well and End of Month reports." When Plaintiffs' counsel first mentioned these documents, in an email, NOV's counsel asked Plaintiffs' counsel to identify what they were seeking, and to identify the Request for Production to which these documents are allegedly responsive. In response, Plaintiffs' counsel provided a billing ticket. *See* Ex. 1.

Plaintiffs claim that NOV must produce these billing tickets in response to Interrogatory No. 10. *See* Ex. 1 to Plaintiffs' Motion. Interrogatory No. 10 only seeks information related to rigging up and rigging down. NOV has produced the billing tickets for rigs that Plaintiffs worked on that mentioned rigging up and rigging down. Ex. 1.

Plaintiffs also claim in their Motion that the "end of month" and "end of well" documents are responsive to Request for Production No. 28 in Plaintiffs' Third Set of Requests for

Production, allegedly attached in Exhibit 3. Plaintiffs do not actually attach Request for Production No. 28 to their Motion, likely because it is obvious that the request did not seek the documents that Plaintiffs claim that it does. Request for Production No. 28 seeks "records for Jack Akin, Jorge Acosta, Michael Favata, Zach Hunter, Jerry Jurach, Michael Mallett and Josue Ramirez, for each oil rig of Closed Loop assignment worked by each Plaintiff which evidence and show when defendant's equipment was rigged up and rigged down." *See* Ex. 2. As noted above, NOV has produced the billing tickets for rigs that Plaintiffs worked on that mentioned rigging up and rigging down. Ex. 1.

Plaintiffs also claim that the billing tickets should have been produced in response to Requests for Production Nos. 1(c), 8, and 9, attached as Exhibit 2 to Plaintiffs' Motion. Again, the documents sought to be compelled are not responsive to any of these requests. Request for Production 1(c) seeks "all records of hours worked for each week submitted to payroll for payment of wages." This request plainly seeks timesheets, not NOV's billing tickets to its customers, which contain no record of "hours worked" and are obviously not "submitted to payroll for payment of wages." Requests for Production No. 8 and 9 plainly seek "daily reports." Plaintiffs' requests for daily reports will be addressed below, but as Plaintiffs acknowledge in their Motion, that is a different category of documents from the "end of month" or "end of well" documents.

Finally, Plaintiffs claim that the documents would be responsive to Request for Production No. 4, attached as Exhibit 5 to Plaintiffs' Motion. In that request, Plaintiffs seek "job contracts, job bids, and documents which [sic] defendant's agreement to provide closed loop operators for each job where any plaintiff worked." NOV objected to this request as vague, and stands by that objection, but even giving the request the best possible reading, this request does

not cover NOV's billing tickets, which are not job contracts or job bids, and are not documents in which NOV agrees to provide closed loop operators. There is no way to tell from the billing tickets whether the personnel that NOV provided were closed loop operators, tool pushers, or other employees. Additionally, Plaintiffs acknowledge in their Motion that this Request covers a different category of documents, "Closed Loop Job Bids and Job Agreement documents," which Plaintiffs also move to compel.[1]

It is an incredible affront to NOV and to the Court for Plaintiffs to file this Motion to Compel documents that they have never requested, and then to claim that the documents are responsive to requests that plainly have nothing to do with the documents.

**2.      Daily Reports**

Plaintiffs also seek to compel the production of daily reports. NOV objected to the blanket requests for all daily reports because it is an extremely onerous and burdensome task for NOV to locate and gather all of these documents. After originally filing a motion to compel on the issue, Plaintiffs' counsel entered into an agreement with NOV's counsel that NOV would produce the daily reports for the rigs and dates worked by 10 selected Plaintiffs who were mutually agreed upon, and Plaintiffs would not move to compel the production of additional daily reports. That agreement was made over the phone between counsel, and was memorialized in an email, attached as Exhibit 3. *See* Ex. 3.

Since that agreement was entered, NOV has held up its end of the bargain, sent personnel to Corpus Christi who spent 3-4 days going through documents just to locate the daily reports for these 10 opt-in plaintiffs, and has produced every daily report in its possession regarding the 10 selected Plaintiffs. Just as NOV was obtaining these documents, Plaintiffs' counsel re-filed the

---

[1] Plaintiffs also claim that this Request covers "Reports showing the name of each closed loop operator billed for and worked on each job site." *See* Motion at P. 2. That is clearly false, and will be addressed more fully in Section I(3) of this Response.

Motion seeking all daily reports. Plaintiffs' Motion directly contradicts the agreement between counsel regarding the production of daily reports.

After Plaintiffs re-filed the motion in contravention of the parties' agreement, counsel for both parties again conferred. And, again, Plaintiffs' agreed to withdraw their motion. *See* Ex. 4. But two days later, Plaintiffs again re-filed the same motion to compel, in direct contradiction of both of the parties' prior agreements.

Since Plaintiffs' re-filing of their motion to compel, NOV has continued to work with Plaintiffs' counsel in an attempt to resolve this discovery dispute. NOV has offered a number of different solutions to compromise this issue. But Plaintiffs have refused to any agreement short of NOV stipulating that "[a]ll Plaintiffs did a daily report every day." See Ex. 5. But, as NOV's counsel has told Plaintiffs' counsel, NOV cannot agree to such a stipulation, because it is not true. For instance, some opt-in Plaintiffs, like Chris Tapia and Dwight Edwards, admitted in their depositions that they never filled out daily reports. See Ex. 6, Deposition of C. Tapia, 15:10; Ex. 7, Deposition of D. Edwards, 96:21. Jorge Acosta testified that he only filled out daily reports 60% of the time he was on a rig. Ex. 8, Deposition of J. Acosta, 26:25–27:9. And Michael Favata testified that he rarely did daily reports because day-shift workers filled out daily reports, and he typically worked the night shift. Ex. 9, Deposition of M. Favata, 86:21–87:4.

Finally, Production of all daily reports in this case would be extremely onerous and burdensome on NOV. NOV does not keep the daily reports in one location or chronologically. Further, the reports themselves are not filed in a way that allows them to be readily tied to any Plaintiff. Rather, NOV must determine, based on each Plaintiff's timesheets, which rig the individual was on a given date. Then, NOV must locate the specific rig file and sort out the daily report information attached as support for billing invoices that NOV sends to its clients. This is a

labor-intensive, time-consuming, and extremely burdensome process. NOV stands on its objection to Plaintiffs' blanket daily reports request.

**3. Reports showing names of Closed Loop Operators**

In their Motion, Plaintiffs seek all documents from NOV that show the names of non-Plaintiff closed loop employees who worked at each rig that a Plaintiff worked.

Again, Plaintiffs have not served a Request for Production on NOV that would cover these documents. As they did for "end of month and end of well" documents, Plaintiffs again claim in their Motion that NOV should have produced these documents in response to Requests for Production No. 8 and 9, attached as Exhibit 2 to Plaintiffs' Motion. As noted above, these requests plainly seek "daily reports." Plaintiffs' requests for daily reports is addressed above, but as Plaintiffs acknowledge in their Motion, that is a different category of documents from "reports showing the names of closed loop operators."

Similarly, Plaintiffs again claim that the documents would be responsive to Request for Production No. 4, attached as Exhibit 5 to Plaintiffs' Motion. In that request, Plaintiffs seek "job contracts, job bids, and documents which [sic] defendant's agreement to provide closed loop operators for each job where any plaintiff worked." As noted above, NOV objected to this request as vague, and stands by that objection, but clearly the request does not seek "reports showing the names of closed loop operators." Plaintiffs acknowledge as much in their Motion, when they seek to compel "Closed Loop Job Bids and Job Agreement documents" based on Request for Production 4.

Even assuming that Plaintiffs had actually requested these documents before they brought this matter to the Court, such a request is extremely onerous and seeks information that is not relevant to any of the claims in the lawsuit. The names of non-plaintiff closed loop employees are not relevant and would not be admissible at trial. Such a requirement would be overly broad

and unduly burdensome.  NOV would have to review all of its time records for all closed loop operators to determine which non-plaintiff NOV employees were working on which rigs at the time that Plaintiffs were working on those rigs.  That task would take weeks, would require NOV to devote significant resources, and would not lead to the discovery of any admissible evidence.  Further, Plaintiffs already know the names of NOV's other closed loop operators for the relevant time period, because NOV produced a spreadsheet with the operators' names and contact information so that the Plaintiffs could send out opt-in notices.

**4.     Timesheets**

Plaintiffs also seek to compel NOV to produce timesheets.  But NOV has produced all of the Corpus Christi timesheet documents from March 19, 2009 through the present for each opt-in Plaintiff.  NOV is not withholding any timesheets during this period.

On July 26, NOV produced approximately 4,400 pages of documents.  Included in these documents were timesheets for all of the opt-in Plaintiffs.  In NOV's transmittal e-mail accompanying the document production, NOV indicated that it was working to locate additional timesheets.  *See* Ex. 10, July 26 Transmittal E-mail.

On August 12, Plaintiffs' counsel identified additional periods of time for which they believed timesheets existed for nine individual Plaintiffs.  NOV reiterated its commitment to provide all of the timesheets that it had within the relevant date range, and informed Plaintiffs' counsel that many of the timesheets that Plaintiffs were seeking did not exist because the time periods identified by Plaintiffs' counsel were before the hire date or after the termination date of the Plaintiff at issue.  *See* Ex. 11, August 12 E-mail.  On August 14, NOV produced an additional 95 pages of documents that it located, including timesheets.  *See* Ex. 12, August 14 Transmittal Letter.

On August 15, NOV explained to Plaintiffs' counsel that many of the opt-in Plaintiffs do

not have timesheets up to their termination date because there is often a few weeks between an employee's last day of work and their termination date. *See* Ex. 13, August 15 E-mail. And on August 21, as it had pledged to do, NOV produced the rest of the timesheets identified in Plaintiff's August 12 e-mail. *See* Ex. 14, August 21 Transmittal Letter. Further, NOV has produced all of the opt-in Plaintiffs' timesheets that exist for the relevant time period. Any other requested timesheets do not exist.

Plaintiffs' counsel has repeatedly sent lists of timesheets that they claim have not been provided, and NOV's counsel has repeatedly informed Plaintiffs' counsel that the timesheets have been produced. *See* Ex. 15; Ex. 16. Finally, Plaintiffs' counsel acknowledged that they had been sending "the wrong lists" to NOV's counsel. *See* Ex. 17. NOV has produced every single timesheet that it has for every single Plaintiff in the case. There are no additional timesheets to compel.

NOV keeps its timesheet documents categorized by year for its employees. All of the timesheets have been produced to the Plaintiffs in the same order and manner that NOV keeps the records. Furthermore, in response to Plaintiffs' counsel's concern that some of the timesheets are "illegible," NOV has agreed to determine whether it has any other copies of the timesheets that the Plaintiffs have identified as illegible.

Plaintiffs' certification that the parties "conferred in good faith" is also incorrect. NOV never refused to provide any of the timesheets that Plaintiffs identified. As NOV told Plaintiffs' counsel before they filed their Motion, the only timesheets that NOV will not produce are timesheets that ***do not exist***. It is shocking that Plaintiffs included timesheets in their Motion to Compel and required NOV to expend the time and money to address this issue that has been fully and exhaustively resolved.

### 5. Management Bonus Records

Plaintiffs also ask this Court to compel the production of compensation records for non-Plaintiff NOV supervisors. NOV's supervisors are not similarly situated to the Plaintiffs and their compensation is not relevant to any of the claims the Plaintiffs have made in this lawsuit. NOV's supervisors are calculated on an entirely different basis than the Plaintiffs. NOV's supervisors were salaried employees, and unlike the closed loop operators at issue in this lawsuit, the NOV supervisors were not paid on an hourly basis. Compensation records of supervisors at NOV would not contain any information that would show hours worked by Plaintiffs in the case, and would not include any relevant information regarding the issue in this case: whether or not Plaintiffs were compensated for the time they worked.

### 6. Closed Loop Operator Job Guidelines

Plaintiffs ask the Court to compel the production of "closed loop operator job guidelines, duties and requirements." As NOV stated in its response, NOV has produced all documents responsive to this request. Plaintiffs themselves signed documents indicating that they understood NOV's policies with respect to the job guidelines and duties of closed loop operators, and those documents have been produced. *See* Ex. 18. NOV objected on the basis of the time period (which was likely a typo) but has produced all responsive documents from March 19, 2009, to present. NOV is not withholding any additional documents in its possession that reflect any job guidelines, duties, or requirements of closed loop operators.

### 7. Closed Loop Job Bids and Job Agreement Documents

In their Motion, Plaintiffs do not even attempt to explain to the Court why the requested documents are relevant, but just write the category of documents. Plaintiffs make no effort to address NOV's valid objections.

This Request is incredibly broad. Plaintiffs seek production of all of NOV's contracts,

bids, and documents between NOV and its customers. Such a requirement would be unduly burdensome on NOV. As noted above, and as is clear from the billing tickets that have been produced, the documents between NOV and its customers do not designate how many closed loop operators would be provided on a given day. The definitive place to look to find how many closed loop operators were on a given job, on a given day, are plaintiffs timesheets, which have all been produced.

## II. PLAINTIFFS' MOTION TO COMPEL INTERROGATORY RESPONSES

Plaintiffs also seek to compel further Interrogatory Responses. Many of the Interrogatories highlighted in Plaintiffs' Motion seek information regarding the policies and practices of NOV's customers – information that is not within NOV's possession.

### 1. June 19, 2013 Interrogatories

**INTERROGATORY NO. 2**

In Interrogatory No. 2, Plaintiffs ask NOV to identify the oil companies that operated the rigs that each Plaintiff worked on, and ask NOV to state its customers' policies with respect to safety meetings.

The only documents in NOV's possession that show the oil company operating the rig that each Plaintiff was working on are the Plaintiffs' timesheets that have been produced. The name of the rig that Plaintiffs worked on is included in the timesheets that NOV has produced and referred to in its response.

NOV does not have any information on its customers' safety meeting policies. NOV generally understands that its customers have safety meetings at their rig sites, but NOV does not control those meetings, their timing, or whether they occur, and does not keep any records regarding its customers' safety meetings.

**INTERROGATORY NO. 3**

In Interrogatory No. 3, Plaintiffs ask NOV to identify the closed loop employee that prepared daily reports for each day of each closed loop job worked by each Plaintiff.

As described more fully above, it is extremely onerous for NOV to have to search for each daily report for each rig that each plaintiff worked, and NOV stands on its objections that the Interrogatory is overly broad and unduly burdensome. Furthermore, the daily reports – a sampling of which have been produced by agreement – do not contain the information sought by Plaintiffs. The daily reports do not indicate which employee filled them out.

**INTERROGATORY NO. 4**

In Interrogatory No. 4, Plaintiffs ask NOV to "identify the name, hired date and number of hours worked of each closed loop employees who worked each day with each Party Plaintiff."

NOV objected that this Interrogatory was vague and confusing. NOV has produced each timesheet for each Plaintiff and has produced documents showing the employees' hire date. To the extent that this Interrogatory seeks information on other NOV employees who are not plaintiffs in this lawsuit, NOV objects that such a requirement would be overly broad, unduly burdensome, and irrelevant. NOV would have to review all of its time records for all closed loop operators to determine which non-plaintiff NOV employees were working on which rigs at the time that Plaintiffs were working on those rigs. That task would take weeks, would require NOV to devote significant resources, and would not lead to the discovery of any admissible evidence.

**INTERROGATORY NO. 10**

In Interrogatory No. 10, Plaintiffs ask NOV to identify the time that each rig was rigged up and rigged down for each location that Plaintiffs worked.

NOV has already produced all documents, including its billing tickets to its customers that reference rig up and rig down. Furthermore, the plaintiffs' timesheets have notes of when

rigging up and rigging down occurred. NOV has no further information on rigging up and rigging down, and does not keep records of rig up and rig down time other than the billing tickets and timesheets previously produced that contain the information sought by plaintiffs.

## 2. July 23, 2013 Interrogatories

### INTERROGATORY NO. 2

In Interrogatory No. 2, Plaintiffs ask NOV to identify the oil companies that conducted daily safety meetings at the sites where Plaintiffs worked and to identify the oil companies' policies with respect to safety meetings.

As noted above, NOV does not have any information on its customers' safety meeting policies. NOV generally understands that its customers have safety meetings at their rig sites, but NOV does not control those meetings, their timing, or whether they occur, and does not keep any records regarding its customer's safety meetings.

### INTERROGATORY NO. 4

In Interrogatory No. 4, Plaintiffs ask NOV to "state its agreement to its customers to provide closed loop operators for each job where the plaintiff worked".

This Interrogatory is vague and confusing. NOV does not know how it can "state its agreement to its customers to provide closed loop operators for each job where the plaintiff worked." NOV's bills to its customers are not relevant to the claims that Plaintiffs are making in the case, and such information would not be admissible at trial. Furthermore, as described above, it would be extremely onerous and burdensome for NOV to search all of its records to find each bill to its customers for each rig on which each plaintiff worked.

### INTERROGATORY NO. 5

In Interrogatory No. 5, Plaintiffs ask NOV to "state the defendant's policy and practice of having non-NOV persons and/or third parties move, repair or relocate Defendant's closed loop

equipment located at oil rig job sites."

NOV objected that this Interrogatory is overly broad and seeks information that is irrelevant to the lawsuit. Notwithstanding these objections, NOV answered this Interrogatory. If a customer requests to move, repair, or service NOV's closed loop equipment, NOV may allow the customer to do so on a case by case basis. That is NOV's policy and practice with regard to having non-NOV personnel handle NOV closed loop equipment.

## CONCLUSION

In light of the above, NOV requests that this Court deny the Plaintiffs' motion. Further, because Plaintiffs filed this motion (1) without actually having conferred in good faith with NOV and (2) without any basis for complaint, NOV requests this Court award NOV its reasonable attorneys' fees required to respond to Plaintiffs' Motion.

Dated: October 25, 2013

Respectfully submitted,

_____/s/ M. Carter Crow_____
M. Carter Crow
State Bar No. 05156500
Federal ID No. 15408
carter.crow@nortonrosefulbright.com
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Telecopier: (713) 651-5246

Attorney-in-Charge for Defendant National Oilwell Varco aka/ fka Brandt NOV

OF COUNSEL
FULBRIGHT & JAWORSKI, L.L.P.

Greg Moore
State Bar No. 24055999
Federal ID No. 726516
greg.moore@nortonrosefulbright.com

Rafe. A. Schaefer
State Bar No. 24077700
Federal ID No. 1743273
rafe.schaefer@nortonrosefulbright.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was served on October 25, 2013, upon the following counsel of record.

| | |
|---|---|
| Mr. Adam Poncio<br>PONCIO LAW OFFICES<br>5410 Fredericksburg Rd., Suite 109<br>San Antonio, Texas 78229-3550 | Mr. Chris McJunkin<br>2842 Lawnview<br>Corpus Christi, Texas 78404 |

                          *s/ M. Carter Crow*
                          M. Carter Crow